UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

RECEIVED-CLERK
U.S. DISTRICT COURT

'04 MAR -8  A 11: 21

NICOLE M. DAWSON,

      Plaintiff,

      v.

JOSEPH FRANK, EMMANUEL MACHADO,
JOSEPH CASTAGNA, SERGIO LAMBOY,
and THE CITY OF JERSEY CITY,

      Defendants.

CIVIL ACTION No.: 04-1039

(JLL)

---

## VERIFIED COMPLAINT WITH JURY DEMAND

NICOLE M. DAWSON, plaintiff, by way of complaint against defendants JOSEPH

FRANK, JOSEPH CASTAGNA, SERGIO LAMBOY, and THE CITY OF JERSEY CITY, on

her oath, hereby deposes and says:

## PARTIES

1. NICOLE M. DAWSON ("Ms. Dawson") is a citizen of the State of New Jersey. At all

times relevant to this action, Ms. Dawson was an employee of defendant, Jersey City. At all

times relevant to this action, Ms. Dawson was also a certified Animal Control Officer. All

conduct complained of by defendant occurred in Hudson County at her place of employment.

2. JOSEPH FRANK ("Mr. Frank") is, upon information and belief, a resident of the State of New Jersey. At all times relevant to this action, Mr. Frank was employed by the City of Jersey City and was a certified Animal Control Officer, and was the Chief Animal Control Officer for the city of Jersey City.

3. EMMANUEL MACHADO ("Mr. Machado") is, upon information and belief, a resident of the State of New Jersey. At all times relevant to this action, Mr. Machado was employed by the City of Jersey City as an Animal Control Officer.

4. JOSEPH CASTAGNA ("Mr. Castagna") is, upon information and belief, a citizen of the State of New Jersey. At all times relevant to this action, Mr. Castagna was employed by the City of Jersey City as a Health Officer with the Division of Health & Human Services, and was the direct and immediate supervisor of defendant, Mr. Frank.

5. SERGIO LAMBOY ("Mr. Lamboy") is, upon information and belief, a citizen of the State of New Jersey . At all times relevant to this action since January 2003, Mr. Lamboy was employed by the City of Jersey City as the Director of Health & Human Services, and was the immediate supervisor of plaintiff, Ms. Dawson.

6. THE CITY OF JERSEY CITY ("Jersey City") is a body politic in the State of New Jersey with offices located City Hall, 280 Grove St., Jersey City, NJ 07302.

## NON-PARTIES

7. Betty Outlaw ("Ms. Outlaw") is, upon information and belief, a citizen of the State of New Jersey. She was, from the time plaintiff was employed by Jersey City through roughly December 2002, the Director of Health and Human Services for Jersey City, and was the

plaintiff's immediate supervisor.

8. Rich McAllister ("Mr. McAllister") is, upon information and belief, a citizen of the State of New Jersey. At all times relevant to this action, Mr. McAllister was employed by the City of Jersey City as an Editor within the Communications Division.

9. Stan Eason ("Mr. Eason") is, upon information and belief, a citizen of the State of New Jersey. At all times relevant to this action, Mr. Eason was employed by the City of Jersey City as Director of the Communications Division.

10. The Liberty Humane Society is a not for profit organization organized under the laws of the State of New Jersey with offices located at 69 Montgomery Street, Jersey City, New Jersey 07303.

11. The Jersey City Animal Shelter is an animal shelter owned and operated by the City of Jersey City, located at 235 Jersey City Boulevard, Jersey City, New Jersey.

## JURISDICTION & VENUE

12. This Court has jurisdiction over the subject matter of this action under Sections 1331, 1343(a)(3) and (4), and 1367 of Title 28 of the United States Code because this action arises under the Constitution and laws of the United States and because it is brought to redress the deprivation of the Plaintiffs' constitutional rights and to secure equitable relief under a federal civil rights statute. This court has jurisdiction over the state law claims asserted herein pursuant to the doctrine of pendent jurisdiction.

13. Venue is proper in this District under Section 1391(b)(1) and (2) of Title 28 of the United States Code because all events and omissions giving rise to this action occurred and all of

the property involved in this action is situated within the District of New Jersey.

## ALLEGATIONS COMMON TO ALL COUNTS

A. The Hiring of Nicole M. Dawson as Shelter Manager

14. In or around April 2002 several animal welfare organizations came together to form the "Animal Shelter Coalition" ("ASC"). The coalition was made up of the following organizations: 1) The Liberty Humane Society ("LHS"); 2) Animals Need You ("ANY"); 3) Companion Animal Placement ("CAP"); and 4) The Hudson County Animal League ("HCAL").

15. The mission underlying the formation of this coalition was to assist defendant, Jersey City, with fund-raising and general improvements at the Jersey City Animal Shelter.

16. At the time the Coalition was formed, the Jersey City Animal Shelter was being operated and managed by defendant, Mr. Frank.

17. After working with the then existing staff at the shelter, and after making general observations at the shelter, the ASC and LHS began making recommendations for improvement at the shelter.

18. One of the first things recommended by the ASC and LHS was the hiring of an experienced, full time shelter manager. At the time this recommendation was made defendant, Mr. Frank, was the interim shelter manager. Mr. Frank held this position while still maintaining his position as Chief animal control officer.

19. By the middle of April 2002, the ASC and LHS began noticing other problems at the shelter. In a memo dated April 18, 2002 from counsel for the ASC to defendant, Mr. Castagna,

the ASC pointed out various problems including 1) reports of animals being left to lie in their own waste and vomit; 2) reports of neglect of health needs of dogs; and 3) reports of large dogs being kept in cages and not properly exercised. In this memo, the ASC made clear its opinion that more employees were needed to alleviate these problems. The ASC memo was also specifically critical of the interim shelter manager, Mr. Frank, maintaining his role as Animal Control Officer while trying to also serve as shelter manager.

20. By letter dated April 23, 2002 directed to former Director of the Jersey City Department of Health & Human Services, Betty Outlaw, the ASC confirmed that it was actively recruiting candidates to replace Mr. Frank as shelter manager. The first resume submitted to Jersey City by the ASC was that of plaintiff, Ms. Dawson.

21. By letter dated May 1, 2002, also directed to Ms. Outlaw, the ASC submitted a written job description for the new shelter manager. That job description specifically recommended that the new manager have a minimum of 5 years experience managing a shelter facility. This recommendation had the effect of precluding the interim manager, Mr. Frank, from even applying for the position.

22. By June 4, 2002 it was evident that defendant Jersey City intended to hire Ms. Dawson as the new shelter manager. However, to the extent this was a civil service position, there would be delay between the offer and the start date. The ASC, seeking to get a new shelter manager started immediately, offered to hire Ms. Dawson as an employee of LHS, and have her salary paid through donations until she could be switched to the City payroll.

23. By June 10, 2002 Jersey City had not yet responded to the ASC and LHS offer to pay Ms. Dawson so she could start as shelter manager immediately. By that same date, additional

5

problems had come to the attention of the ASC. By letter dated June 10, 2002 from counsel for the ASC, defendant Jersey City was made aware of the following:

   a. Defendant Mr. Frank, while acting as interim shelter manager, decided to increase the number of animals euthanized in order to lighten the workload for the staff. This decision not only killed animals needlessly, but also cost the shelter more money than it would have cost to hire additional employees.

   b. Defendant Jersey City was paying Mr. Frank overtime equal to roughly twice his regular pay while he wore the hat of both shelter manager and Chief Animal Control Officer. The ASC also pointed out that this split in responsibilities created a situation where neither job was done well. The ASC June 10, 2002 letter made reference to a story which had appeared in a local paper about a group of children who took in a stray dog because no animal control officer would respond to the scene.

   c. Defendant Mr. Frank, while shelter manager, was negligent in his administration of vaccinations for animals at the shelter.

24. Upon information and belief, Mr. Frank became aware of the criticism lodged against him by the ASC.

25. Upon information and belief, defendant Mr. Frank was also made aware of the ASC's attempts to replace him as shelter manager with plaintiff, Ms. Dawson.

26. By memo dated June 21, 2002 to Betty Outlaw, the ASC pointed out additional problems at the shelter, thereby further criticizing defendant, Mr. Frank. Specifically, the ASC reported two instances when the shelter was closed during what were normal business hours. In each instance, defendant Mr. Frank could not be reached, nor could anyone on his staff.

27. Upon information and belief, Mr. Frank was made aware of the June 21, 2002 memo.

28. Plaintiff, Ms. Dawson, began her employment as shelter manager on or about July 22, 2002.

B.  The Harassment of Nicole M. Dawson

29. Almost immediately after beginning as the new manager of the Jersey City Animal Shelter, Ms. Dawson experienced harassment at the hands of the defendants.

30. During the first week of her employment as shelter manager, plaintiff was advised by Mr. Frank that he had sent an important application to the Office of Drug Control ("ODC") so that the shelter might be able to euthanize on site, thereby saving thousands of dollars per year. Mr. Frank knew this to be a priority for the shelter, and an important step for the new manager to complete. Upon following up with the ODC, Ms. Dawson learned that no application was on file from Jersey City.

31. During the first week of her employment, plaintiff was also advised by Mr. Frank that the proper procedure for removal of medical waste was to deliver them to the City nurse, and that the city nurse would then disposes of such waste. This advised practice was in direct violation of NJDEP guidelines which require removal of such waste by certified removal companies.

32. During the first two weeks of Ms. Dawson's employment, Mr. Frank came by the shelter on almost a daily basis. During that time, Mr. Frank was injured, and could not have been at the shelter in his capacity as an animal control officer either dropping off or picking up animals. The purported reason Mr. Frank came by each day was to socialize with the seasonal workers employed at the shelter. While doing so, Mr. Frank would also go into Ms. Dawson's

7

office, hold meetings with the seasonal workers, and rummage through her desk and filing cabinet. Mr. Frank bragged to Ms. Dawson about having done this.

33. By memo dated August 5, 2002 Ms. Dawson brought the issues outlined in paragraphs 30 through 32 to the attention of Betty Outlaw and defendant, Jersey City.

34. During this same period (roughly the first two weeks of her employment) Ms. Dawson also had problems with the seasonal workers with whom Mr. Frank had a relationship. Two of these employees were insubordinate, and would not show up for work. Ms. Dawson attempted to resolve this matter by appropriate discipline. Before doing so, she inquired of defendant, Mr. Castagna, what the appropriate procedure was for discipline. This inquiry was made by memo dated July 29, 2002. In a series of memos and letters over the next week or so, Ms. Dawson requested copies of Jersey City written procedure for employee discipline. Ultimately, Mr. Castagna intervened on behalf of the seasonal workers, and instructed that they not be fired.

35. In a meeting on July 31, 2002 at the shelter, Mr. Castagna openly criticized Ms. Dawson in front of Mr. Frank and the seasonal workers. In addition, Mr. Castagna instructed the seasonal workers that if they had a problem with Ms. Dawson in the future, they could go directly to him, and if he was not available, to Mr. Frank. All this was summarized by memo dated July 31, 2002 from Ms. Dawson to Mr. Castagna,.

36. By August 5, 2002, despite repeated requests to Mr. Castagna for copies of the shelter operating budget, the same was not supplied. This fact was reported in Ms. Dawson's August 5, 2002 memo to Ms. Outlaw.

37. On several occasions between August 1, 2002 and August 21, 2002 Mr. Frank

8

threatened Ms. Dawson with a surprise inspection of the shelter in retaliation for her discipline of the seasonal workers at the shelter.

37. On August 21, 2002 Mr. Frank conducted a surprise inspection of the shelter at the direction of Mr. Castagna. During the inspection, his demeanor to Ms. Dawson's staff was harsh and critical. Mr. Frank berated Ms. Dawson during the inspection in front of several witnesses.

38. The events surrounding the August 21, 2002 surprise inspection are summarized in a memo by the same date from Ms. Dawson to Betty Outlaw.

39. By memo dated August 27, 2002 and directed to Ms. Outlaw, Ms. Dawson summarized other instances of harassment at the hands of Mr. Frank, and approved by Mr. Castagna:

  a. Animal Control Officers ("ACO")refusing to transport animals to vet for treatment or euthanasia;

  b. ACO's refusing to transport euthanized animals to incinerator authority;

  c. ACO's refusal to fill out animal intake forms when dropping off strays; and

  d. ACO's refusal to take sick or injured strays directly to the vet or animal hospital, and instead, dropping them off at the shelter, and then refusing to take them to the vet at any future date.

40. By another memo dated August 27, 2002 to Ms. Outlaw, Ms. Dawson outlined specific instances of harassment by Emmanuel Machado, under the direction of Mr. Frank. That memo documented specific instances of Mr. Machado's insubordination, and Mr. Frank's tacit approval of the same.

41. On or about August 29, 2002 Ms. Outlaw spoke with Mr. Frank and Mr. Castagna

and instructed them as to the necessity of ACO's providing transportation for sick, injured and euthanized animals. Despite this instruction, the very next day, Mr. Frank refused to respond to Ms. Dawson's request for transport of animals. On August 31, 2002, Mr. Frank was at the shelter and openly told Ms. Dawson that he has no intention of assisting the shelter with any transportation regardless of what Ms. Outlaw instructed.

42. By memo dated September 2, 2002 Ms. Dawson made Ms. Outlaw, and defendant Jersey City, aware of Mr. Franks's continued insubordination.

43. By September 3, 2002, and despite repeated requests to Mr. Castagna, Ms. Dawson still had not received any copies of relevant City ordinances and regulations pertaining to the shelter, nor had she received copies of the shelter's previous budget. This request was renewed by memo dated September 3, 2002 and directed to Ms. Outlaw.

44. On or about September 5, 2002 Mr. Frank and his staff of ACO's began frustrating the shelter's ability to comply with regulations concerning dog bite surrender cases. Mr. Frank and his staff would not obtain all information from the owner when seizing a dog in a bite case, and would then drop the animal at the shelter, making it impossible for the shelter to euthanize after the hold period expired. This practice caused overcrowding at the shelter, and created a dangerous work environment for Ms. Dawson and her staff. This practice was described by Ms. Dawson in an October 1, 2002 memo to Ms. Outlaw and in an October 2, 2002 memo to Ms. Outlaw.

45. Through October 4, 2002 Mr. Frank and Mr. Machado continued to bring sick and injured animals directly to the shelter. In addition, by this date it came to Ms. Dawson's attention that Mr. Frank was coming to the shelter at times she was not there, and would purposely go into

10

Ms. Dawson's office and sit at her desk, when there was no reason for his doing so. These facts were summarized in a memo from Ms. Dawson to Ms. Outlaw dated October 4, 2002.

46. By letter dated October 4, 2002 to Mr. Frank, Ms. Dawson made him directly aware of the problems created by his refusal to comply with state law. A copy of this letter was provided to Ms. Outlaw and to defendant, Jersey City.

47. By memo dated October 25, 2002 Ms. Dawson made Ms. Outlaw aware of additional instances wherein Mr. Frank and Mr. Machado refused to provide transportation for sick or injured animals.

48. By memo dated November 6, 2002 Ms. Dawson made Ms. Outlaw aware of another instance of Mr. Frank's refusal to comply with state law as it relates to the New Jersey Dangerous Dog statute. Specifically, Mr. Frank's disregard for regulations created a situation where Ms. Dawson and her staff were holding a potential defendant's dogs illegally. A copy of this memo was also sent directly to Deputy Mayor Anthony Cruz.

49. By memo dated November 12, 2002 Ms. Dawson made Ms. Outlaw aware that Mr. Frank showed up at the shelter on Saturday, November 9, 2002 with no official purpose, in street clothes, and was asking various volunteers about the origin of various animals in the shelter.

50. On or about November 25, 2002, following an usually long delay in receiving ordered supplies, Ms. Dawson learned that Mr. Castagna ordered the city Health Department to no longer fill orders or have anything to do with the shelter. Ms. Dawson made Ms. Outlaw aware of this by memos dated November 25, 2002, November 27, 2002, and December 11, 2002.

51. By memo dated December 10, 2002 Ms. Dawson made Ms. Outlaw and defendant Jersey City aware of her intent to file an EEOC complaint against Mr. Frank.

11

52. On or about December 11, 2002 Mr. Frank began telling various people of his intent to file animal cruelty charges against Ms. Dawson. He told this to one of the shelter workers, and to a veterinarian.

53. By memo dated December 22, 2002 addressed to Ms. Outlaw, Mayor Cunningham, Deputy Mayor Cruz, and Corporation Counsel for Jersey City Ms. Dawson put all on notice of the current situation, and provided a detailed history of the harassment she had endured since starting her job.

54. By memo dated December 26, 2002 from Ms. Dawson to Larry Ross, Assistant Director of personnel for the City, Ms. Dawson further announced her intent to file a complaint against Mr. Frank due to his continued harassment. Immediately thereafter, said complaint was filed with the Jersey City office of affirmative action through a Ms. Darlene Pharmes. Mr. Frank and Mr. Castagna were made aware of the existence of the affirmative action complaint, and the harassment continued.

55. On January 4, 2003 State SPCA Officer Stuart Rhodes entered the shelter threatening to arrest Ms. Dawson on charges of animal cruelty. He was there based upon information provided by Mr. Frank.

56. In January 2003, Mr. Castagna indicated he was refusing to approve payment for the shelter veterinarian. This refusal came even though the vet was owed over $12,000.00. The vet threatened to cut off his services to the shelter. If the shelter has no veterinarian, State law requires that the shelter be closed. This regulation was known to Mr. Castagna.

57. In or around March 2003, upon information and belief, defendant Mr. Frank began spreading rumors throughout the animal welfare community that plaintiff ordered partially live

12

dogs put in the freezer at the shelter after they had been unsuccessfully euthanized.

58. Following various meetings with defendants and with Ms. Pharmes, plaintiff's affirmative action complaint was amicably resolved.

59. By letter dated April 17, 2003 from defendant, Mr. Lamboy to Ms. Pharmes, Lamboy indicated the matter had been resolved in that Castagna & Frank assured him they would "approach their working relationship with [plaintiff] with a professional attitude." However, that same letter does not accurately describe the assurances made to plaintiff by Mr. Lamboy. In resolution of her complaint, she was promised by Mr. Lamboy that if the harassment resumed or continued, Mr. Lamboy would take immediate action. That assurance, however, is expressed in a memo from Ms. Pharmes to plaintiff dated June 2, 2003. Ms. Pharmes June 2, 2003 memo also clarified the fact that from that date forward, plaintiff was to report directly to Mr. Lamboy, so as to avoid the likelihood of continued problems with Mr. Castagna.

60. In an effort to foster the new working relationship between herself and defendant Mr. Frank, by memo dated June 10, 2003 plaintiff attempted to communicate a new policy initiative regarding owner-surrendered animals and the role of animal control officers. The initiative was designed to deal with the continuing problem of limited space at the shelter.

61. In a responsive memo dated June 11, 2003, defendant Frank questioned plaintiff's policy initiative, and further challenged plaintiff's authority to post a sign at the shelter which indicated the fees charged for handling animals.

62. On or about June 20, 2003 plaintiff informed defendant Lamboy that the shelter could not accept any dogs in the immediate future in excess of 40 pounds, as there was only one small cage available due to severe space problems and overcrowding. Upon information and

belief, Mr. Frank was aware of this situation.

63. On June 22, 2003 Mr. Frank brought a dog to the shelter for surrender which was in excess of 40 pounds. Plaintiff informed Mr. Frank that she could not accept the animal per the conversation she had two days earlier with defendant Lamboy. Defendant Frank informed plaintiff that by not accepting the dog, she was violating the contract between the shelter and Jersey City. Frank then placed a call on his cellular phone to defendant Castagna. After making the call, Frank told plaintiff that per Castagna's order, she was to immediately surrender the shelter's cleaning supply purchase card to Mr. Frank. Plaintiff refused, referred Mr. Frank to Mr. Lamboy, and summarized this incident in a memo to Lamboy dated June 22, 2003.

64. By memo of the same date, June 22, 2003 plaintiff also advised defendant Lamboy that defendant Frank was bringing an unusually high number of dangerous dogs into the shelter, and then not following required law for dangerous dog holds, thereby compelling the shelter to hold dogs for unspecified periods, and in turn, making the shelter unnecessarily crowded and in violation of state law. For example, four dogs were seized on May 11, 2003 in a particular case from a particular owner. By the end of June, 2003 plaintiff was informed by Sergeant Gaglioto of the State SPCA that her shelter was holding the dogs illegally, and that they must be released. Upon issuing the order to release the animals, Mr. Frank began telling people that plaintiff was in contempt of a court order which directed her not to release these animals. Plaintiff was unaware of any such order, as demonstrated by letter dated July 1, 2003 to the Jersey City Municipal Court Judge.

65. By memo dated November 3, 2003 to defendant Lamboy, plaintiff made Lamboy aware of another incident wherein defendant Frank acted in violation of state law, was

confronted on it, and then retaliated by bringing in more dangerous dogs to the shelter, without providing sufficient information. Defendant Frank was also encouraging defendant Machado to do the same.

66. Due to defendants Frank & Machado acting in the manner described above, by memo dated November 4, 2003 to defendant Lamboy, plaintiff informed all defendants that she had to place a one week moratorium on receiving any dogs at the shelter in excess of thirty pounds.

67. The cage space crisis caused by defendants further compelled plaintiff to inform the State SPCA that the Jersey City Animal Shelter could no longer perform impound services for that agency. This was communicated by letter from Ms. Dawson to Charles Gerofsky dated November 10, 2003.

68. On November 11, 2003 plaintiff sent a detailed memo to defendant Lamboy indicating that the harassment from Joe Frank had resumed. The memo also requested that, per the resolution of her prior complaint, Lamboy take immediate action.

69. Within a day or two of submitting the November 11, 2003 memo to defendant Lamboy, plaintiff was in a meeting with Director of Communications for Jersey City, Stan Eason. During this meeting, Eason called defendant Lamboy on the telephone to discuss a possible raise for plaintiff. Mr. Eason put the call on speaker, and instructed plaintiff to remain quiet so that Lamboy would not know she was present for the conversation. In response to Eason's suggestion that Ms. Dawson be given a raise, Lamboy first stated that in her position, Ms. Dawson does nothing to assist the Mayor or the City, and therefore there was no reason to consider a raise. Eason suggested it is important to recognize quality employees. In response, Lamboy asked, "Hey Stan, is this girl under your desk?" He further stated, "I know she is a good

15

looking girl, but what exactly is she doing for you that you are trying to get her a raise?"

70. Since the November 11, 2003 memo from plaintiff to defendant Lamboy, no action has been taken to remedy the ongoing harassment carried out by defendants Frank, Castagna and/or Machado.

71. In a manner similar to the events described thus far, the harassment of plaintiff by defendants continues on a daily basis.

72. The most recent events are as follows:

a.  On Friday, February 27, 2004 Mr. Frank and Mr. Machado brought various animals to the shelter which were seized illegally from the residence of Christopher Gonzalez.

b.  On Saturday, February 28, 2004 Mr. Frank brought several stray dogs to the shelter, and then remained at the shelter interrogating the staff, and searching through plaintiff's desk, and through the shelter's log book.

c.  On Monday, March 1, 2004 plaintiff forwarded a memo to Mr. Frank advising him that 1) the animals seized from Mr. Gonzalez were seized illegally, that she communicated this fact to Mr. Gonzalez, and that the animals should be returned immediately, and 2) that plaintiff objected to Mr. Frank interrogating her staff and searching through her office and the shelter log book. A copy of this memo was provided to defendant, Lamboy.

d.  On Monday, March 1, 2004, and after receiving plaintiff's memo, Mr. Frank returned the illegally seized animals to Mr. Gonzalez.

e.  On Tuesday, March 2, 2004 plaintiff was contacted by State SPCA Agent Bernavon Lazarl who told plaintiff that a complaint had been filed against her and the shelter which accused the shelter of "killing dogs in the kitchen," not having a proper euthanasia license, and

not having staff properly trained to euthanize.  Plaintiff was forced to provide copies of the

shelter euthanasia licenses and proof of proper training.  Upon information and belief, the

complaint was made by defendant Frank in retaliation for plaintiff's memo of March 1, 2004.

     f.  On March 4, 2004 defendant, Mr. Frank, sent a memo to plaintiff which, among other

things, accuses plaintiff of violating State & local laws regarding operation of a "City animal

impoundment facility," and accuses plaintiff of interfering in animal control bureau cases.

Defendant also threatens to prosecute plaintiff for obstruction of government function.  Mr.

Frank provided a copy of this memo to Mr. Lamboy, Mr. Castagna, all animal control officers,

and all animal shelter workers.

     73.  As a direct and proximate result of all the conduct engaged in by all named

defendants, Ms. Dawson has suffered various damages including, but not limited to, financial

damages, severe emotional distress, injury to reputation, and a violation of numerous

constitutional rights.

     74.  The actions of the above named individual defendants  violated the following clearly

established and well settled constitutional and federal statutory rights of Ms. Dawson:

     a.     Her right to property;

     b.     Her right to due process;

     c.     Her right to equal protection; and

     d.     Her rights under Title VII of the Civil Rights Act.


## FIRST CAUSE OF ACTION

     75.  Plaintiff repeats paragraphs 1 through 74 and incorporates the same as if fully set

forth herein.

76. All defendants are persons who acted under color of State law.

77. By their actions, both individually and combined, defendants deprived plaintiff of her rights, privileges or immunities as secured by the Constitution or laws of the United States.

## SECOND CAUSE OF ACTION

78. Plaintiff repeat paragraphs 1 through 74 as if fully set forth herein.

79. Prior to the employment of plaintiff, Jersey City, defendant Castagna and defendant Lamboy developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights and other rights protected by federal law of the individual citizens that Jersey City employed, which in turn caused the violation of plaintiff's rights described herein.

80. It was the policy and/or custom of defendants Jersey City, Castagna and Lamboy to inadequately and improperly investigate and respond to workplace environment complaints, particularly those lodged by women.

81. It was the policy and/or custom of these defendants to inadequately supervise and train its staff, thereby failing to discourage further violations of civil rights as protected by Federal law.

82. The above described policies and customs demonstrated deliberate indifference on the part of policymakers of the defendants to the constitutional rights and federally protected statutory rights of the citizens they serve and were the cause of the violations of plaintiff's rights as alleged herein.

## THIRD CAUSE OF ACTION

18

83. Plaintiffs repeat paragraphs 1 through 74 as if fully set forth herein.

84. All defendants acted under color of state law.

85. All defendants combined and conspired to deprive plaintiff of well settled rights as established by the United States Constitution and by the laws of the United States.

## FOURTH CAUSE OF ACTION

86. Plaintiff repeats and reasserts paragraphs one 1 through 74 as if fully set forth herein.

87. The pattern of harassment engaged in by all individual defendants and tacitly approved by the entity defendant created a hostile and offensive work environment in violation of N.J.S.A. 10:5-1, et seq.

## FIFTH CAUSE OF ACTION

88. Plaintiff repeats and reasserts paragraphs one 1 through 74 as if fully set forth herein.

89. All individual defendants owe plaintiff a duty to act in a manner not likely or reasonably certain to create undue emotional distress.

90. All individual defendants have acted recklessly, carelessly and negligently with regard to plaintiff and have recklessly, carelessly and negligently breached the duty owed to plaintiff.

WHEREFORE, plaintiff requests that this Court:

1. Award compensatory and punitive damages to plaintiff against the defendants, jointly and severally;

2. Award the costs of this action to the plaintiff;

3. Award reasonable attorney's fees and costs where permissible under statute;

4. Award injunctive relief, so that individual defendants be and are permanently

19

restrained from coming on the premises of the Jersey City Animal Shelter;

    5. Award temporary injunctive relief, so that the individual defendants be and are temporarily restrained from coming on the premises of the Jersey City Animal Shelter pending further order of this court; and

    6. Award such other relief as this Court may deem just, equitable and appropriate.

### JURY DEMAND

Plaintiffs hereby demands trial by jury.

Dated: 3-7-04

LAW OFFICE OF WILLIAM STRAZZA
William Strazza, Esq. (6494)
2004 Morris Avenue, Suite 5
P.O. Box 3806
Union, New Jersey 07083-1891
(908) 688-8005
Attorney for Plaintiff, Nicole M. Dawson

By:_____
      William Strazza

## **VERIFICATION**

I, Nicole M. Dawson, upon my oath, hereby swear that all the statements of fact contained in this verified complaint are true, and understand I am subject to punishment if any of the statements contained herein are willfully false.

_Nicole M. Dawson_

Nicole M. Dawson

Dated:

## CERTIFICATION OF SERVICE

I hereby certify that service of this complaint, and all moving papers in connection with plaintiffs' application for emergent relief, has been accomplished in the following manner:

1.  Upon all defendants, on Sunday March 7, 2004, via telefax only, and tot the fax numbers indicated on the Fax Cover Sheet annexed to this certification.

I further certify that before filing this lawsuit, I have contacted City Counsel for the City of Jersey City and informed that office of my intent to file this complaint and to apply for emergent relief.

I hereby certify that all the statements contained herein are true, and understand I am subject to punishment if any of the statements contained herein are willfully false.

_____
William Strazza, Esq.

Dated: 3-7-04

# LAW OFFICE OF WILLIAM STRAZZA

2004 Morris Avenue, Suite 5
P.O. Box 3806
Union, New Jersey 07083-1891

Telephone: (908) 688-8005
Facsimile: (908) 688-8780

# **FAX COVER SHEET**

To:         Karen DeSoto, Corporation Counsel @ 201-547-5230
            Joseph Frank, ACO @ 201-547-4848
            Joseph Castagna @ 201-547-4848 & 201-547-6816
            Emmanuel Machado @ 201-547-4848
            Sergio Lamboy @ 201-547-6816

Fax Number:

From:       William Strazza, Esq.

Date:       March 7, 2004

Re:         Dawson v. Jersey City, et al. - Verified Complaint & application for emergency relief

Total Number of Pages (Including Cover Page):

The information contained in this facsimile message is information protected by the attorney-client privilege and/or the attorney-client work product doctrine. It is intended for the use of the individual named above and the aforementioned privileges are not waived by virtue of this message having been sent via facsimile. If the person actually receiving this facsimile is not the named recipient , any use dissemination, distribution or copying is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original to the above listed address.

Message:

To all defendants named above:

The attached documents are the complete contents, minus exhibits & summonses, of a lawsuit being filed at the open of business on Monday, March 8, 2004 in the United States District Court, District of New Jersey, Newark.  In addition to the filing of the suit, I shall also be seeking emergent relief in the form of a temporary restraining order.  If there are any questions, feel free to reach me on my cell phone - 732-598-1030.  You may also feel free to simply join me at the clerk's office as I wait for a judge to be assigned to this matter.  All individual defendants, on behalf of my client, I would encourage you to either contact corporation counsel or your own attorney.

Sincerely,

William Strazza

Joseph Castagna @ 201-547-4848 & 201-547-0610
Emmanuel Machado @ 201-547-4848
Sergio Lamboy @ 201-547-6816

Fax Number:

From: William Strazza, Esq.

Date: March 7, 2004

Re: Dawson v. Jersey City, et al. - Verified Complaint & application for emergency relief

Total Number of Pages (Including Cover Page): 38

---

The information contained in this facsimile message is information protected by the attorney-client privilege and/or the attorney-client work product doctrine. It is intended for the use of the individual named above and the aforementioned privileges are not waived by virtue of this message having been sent via facsimile. If the person actually receiving this facsimile is not the named recipient, any use dissemination, distribution or copying is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original to the above listed address.

Message:

To all defendants named above:

The attached documents are the complete contents, minus exhibits & summonses, of a lawsuit being filed at the open of business on Monday, March 8, 2004 in the United States District Court, District of New Jersey, Newark. In addition to the filing of the suit, I shall also be seeking emergent relief in the form of a temporary restraining order. If there are any questions, feel free to reach me on my cell phone - 732-598-1030. You may also feel free to simply join me at the clerk's office as I wait for a judge to be assigned to this matter. All individual defendants, on behalf of my client, I would encourage you to either contact corporation counsel or your own attorney.

Sincerely,

William Strazza

TRANSMISSION VERIFICATION REPORT

TIME : 02/16/2004 10:50
NAME :
FAX :
TEL :
SER.# : BROH1J528545

| | |
|---|---|
| DATE,TIME | 02/16 10:41 |
| FAX NO./NAME | 12015476816 |
| DURATION | 00:08:43 |
| PAGE(S) | 38 |
| RESULT | OK |
| MODE | STANDARD<br>ECM |

TRANSMISSION VERIFICATION REPORT

TIME : 02/16/2004 10:30
NAME :
FAX :
TEL :
SER.# : BROH1J528545

| | |
|---|---|
| DATE,TIME | 02/16 10:21 |
| FAX NO./NAME | 12015474848 |
| DURATION | 00:08:50 |
| PAGE(S) | 38 |
| RESULT | OK |
| MODE | STANDARD<br>ECM |

Joseph Castagna @ 201-547-4848 & 201-547-6816
Emmanuel Machado @ 201-547-4848
Sergio Lamboy @ 201-547-6816

Fax Number:

From: William Strazza, Esq.

Date: March 7, 2004

Re: Dawson v. Jersey City, et al. - Verified Complaint & application for emergency relief

Total Number of Pages (Including Cover Page): 38

---

The information contained in this facsimile message is information protected by the attorney-client privilege and/or the attorney-client work product doctrine. It is intended for the use of the individual named above and the aforementioned privileges are not waived by virtue of this message having been sent via facsimile. If the person actually receiving this facsimile is not the named recipient, any use dissemination, distribution or copying is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original to the above listed address.

Message:

To all defendants named above:

The attached documents are the complete contents, minus exhibits & summonses, of a lawsuit being filed at the open of business on Monday, March 8, 2004 in the United States District Court, District of New Jersey, Newark. In addition to the filing of the suit, I shall also be seeking emergent relief in the form of a temporary restraining order. If there are any questions, feel free to reach me on my cell phone - 732-598-1030. You may also feel free to simply join me at the clerk's office as I wait for a judge to be assigned to this matter. All individual defendants, on behalf of my client, I would encourage you to either contact corporation counsel or your own attorney.

Sincerely,

William Strazza

Joseph Castagna @ 201-547-4848 & 201-547-6816
Emmanuel Machado @ 201-547-4848
Sergio Lamboy @ 201-547-6816

Fax Number:

From: William Strazza, Esq.

Date: March 7, 2004

Re: Dawson v. Jersey City, et al. - Verified Complaint & application for emergency relief

Total Number of Pages (Including Cover Page): 38

---

The information contained in this facsimile message is information protected by the attorney-client privilege and/or the attorney-client work product doctrine. It is intended for the use of the individual named above and the aforementioned privileges are not waived by virtue of this message having been sent via facsimile. If the person actually receiving this facsimile is not the named recipient, any use dissemination, distribution or copying is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original to the above listed address.

Message:

To all defendants named above:

The attached documents are the complete contents, minus exhibits & summonses, of a lawsuit being filed at the open of business on Monday, March 8, 2004 in the United States District Court, District of New Jersey, Newark. In addition to the filing of the suit, I shall also be seeking emergent relief in the form of a temporary restraining order. If there are any questions, feel free to reach me on my cell phone - 732-598-1030. You may also feel free to simply join me at the clerk's office as I wait for a judge to be assigned to this matter. All individual defendants, on behalf of my client, I would encourage you to either contact corporation counsel or your own attorney.

Sincerely,

William Strazza

TRANSMISSION VERIFICATION REPORT

TIME : 02/16/2004 06:00
NAME :
FAX :
TEL :
SER.# : BROH1J528545

| | |
|---|---|
| DATE,TIME | 02/16 05:52 |
| FAX NO./NAME | 12015475230 |
| DURATION | 00:08:43 |
| PAGE(S) | 38 |
| RESULT | OK |
| MODE | STANDARD<br>ECM |